# PELUSO & TOUGER, LLP

ATTORNEYS AT LAW
70 LAFAYETTE STREET
NEW YORK, NEW YORK 10013

**MEMO ENDORSED**

TELEPHONE: (212) 608-1234
FACSIMILE: (212) 513-1989

3/4/2020

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/5/2020

Judge Colleen McMahon
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Defendant's Motion to be released on bail is denied, with leave to renew should the temporary visiting shutdown at the MCC persist past next week.

*[signature: Colleen McMahon]*

Re: United States v. Calvin Hudson, 19 CR 496 (CM)

Your Honor,

I am writing to respectfully request that the Court reconsider its denial of bail to Mr. Hudson due to the current conditions at the Metropolitan Correctional Center (MCC).

**Introduction**

The MCC has entirely shut its doors to legal and social visitation for six straight days[1]. Because the closure deprives Calvin Hudson of the ability to meet with counsel, his detention violates the Sixth Amendment, and he should be released. Separately, the Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). That provision also requires Mr. Hudson's release especially considering that his trial date is quickly approaching.

---

[1] Before the shut down, it was already quite difficult to meet with Mr. Hudson at the MCC as the MCC severely limits the number of attorneys that can see their clients due to the limited space they provide. This in and of itself has made preparing for trial quite difficult, as noted at the last Court conference. The shut down, however, only exacerbates an already horrible situation.

**Factual Background**

Beginning Thursday, February 27, the MCC has cancelled all outside visitation, including legal and family visits. The closure has now lasted six days, and there is no timetable for reopening. The closure comes on the heels of weeks of extensive delays in legal visiting when lawyers waited two to three hours to see their clients if they were able to see them at all. The only reason given for the closure has been "security concerns." Media reports (which seem to have come from the MCC, despite the institution's refusal to provide any additional information) say that the MCC is concerned that a gun may have been introduced into the facility. While that is a serious concern, it cannot justify a full closure for nearly a full week. Although the Marshals have produced up to five persons per day at the courthouse for legal visiting, the MCC holds more than 700 people, and the small number of visits cannot adequately provide for access to counsel. Furthermore, even if able to secure one of these few consultations it will be hard to have meaningful trial preparation in the interview rooms at 500 Pearl Street due to their configuration.

**The Sixth Amendment Requires Calvin Hudson's Release**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." The Sixth Amendment right to counsel is the central constitutional protection ensuring fairness in an adversarial criminal justice system. The right plays an especially important role before the commencement of trial. It is during that critical pre-trial period when the accused relies on counsel to investigate the charges against them, formulate potential defenses, and assist in preparing the case for trial. In this case it is even more imperative to meet with Mr. Hudson because he has only recently been charged in a superseding indictment which –

as the Court is well aware – has greatly expanded the case against Mr. Hudson. Due to the MCC's failure to provide adequate visitation prior to the shutdown, and now with the shutdown, counsel has not been able to discuss and review this new indictment and the new charges contained therein with his client at all.[2]

This makes trial preparation quite difficult. To "deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself," because what happens at the "earlier, critical stages in the criminal justice process ... might well settle the accused's fate and reduce the trial itself to a mere formality." *Maine v. Moulton*, 474 U.S. 159, 170 (1985) (internal quotations marks omitted). BOP regulations formally recognize the importance of the right to counsel and the agency's role in upholding it. These regulations instruct that detention center wardens *"shall provide* the opportunity for pretrial inmate-attorney visits on a seven-days-a-week basis." 28 C.F.R. § 551.117(a) (emphasis added).

A detention facility thus violates the Sixth Amendment where it "unreasonabl[y] interfere[s] with the accused person's ability to consult counsel." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001). Unreasonable interference requires a showing far less alarming than the one present here. In *Benjamin,* for example, the Second Circuit held that New York City correctional facilities violated the right to counsel where defense attorneys "routinely face[d] unpredictable, substantial delays in meeting with clients" and were "forced to wait between 45 minutes and two hours, or even substantially longer, after arriving at a facility to see a client." 264 F.3d at 179. Although legal visiting was still available, delays sometimes

---

[2] Counsel also arrived at 500 Pearl Street over an hour before Mr. Hudson's most recent court appearance in an attempt to meet with Mr. Hudson, but was told by the Marshals' Service that Mr. Hudson would not be available until he was produced to the courtroom for his appearance.

forced defense attorneys "to abandon efforts to meet with clients," particularly for appointed lawyers who shouldered a significant caseload. *Id.* at 180. On that basis, the Second Circuit refused to dissolve a consent decree that provided for judicial supervision of legal visiting in the City facilities. *Id.* at 188. Similarly, in *Wolfish v. Levi,* the Second Circuit held that the MCC had "severely constrained" an inmate's "access to legal counsel" where dedicated attorney visiting hours were limited to two hours a day, and most attorneys visits were thus "made in the general visiting rooms during visiting hours thereby entailing long delays, limiting the attorney's time with his client, and totally vitiating confidentiality." 573 F.2d 118, 133 (2d Cir. 1978), *rev'd on other grounds,* 441 U.S. 520 (1979). The right to counsel may be violated even where prison officials impose no restrictions on visits by attorneys, but rather bar visitation by attorneys' paralegal staff. *See Smith v. Coughlin,* 748 F.2d 783, 789 (2d Cir. 1984).

Here, the MCC's continuing blanket denial of access to counsel represents interference far more unreasonable and disturbing than that seen in *Benjamin, Wolfish,* and *Smith.* As stated, in particular in Calvin Hudson's case we are in the midst of preparing for trial and the defendant has just been re-indicted on new charges that – as the Court noted at the last conference – greatly increase the defendant's sentencing exposure and alter the magnitude of the case. Furthermore, Mr. Hudson's trial is scheduled to begin a mere 6 weeks from today. The closure has cost counsel at this point one week of preparation time and the MCC's lack of visitation space caused counsel one week before that. It is impossible to prepare for trial under such circumstances. The situation is quickly arising to the point that counsel will be forced to ask the Court to adjourn the

trial date[3] because of their inability to adequately prepare the case for trial due to the shutdown and visitation limitations. Thus, Mr. Hudson's constitutional right to a speedy trial might also be violated due to the situation at the MCC.

For these reasons, Calvin Hudson must be released.

**The Bail Reform Act Requires Release**

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason. 18 U.S.C. § 3142(i). There is no greater necessity for the preparation of a "person's defense" than access to counsel. Furthermore, the MCC's canceling of all social visits constitute "another compelling reason" for temporary release within the language of § 3142(i).

Regarding an accused's need to consult with counsel, "Section 3142(i)(3) reaches above the minimum" standards set by the Sixth Amendment. *United States v. Rodriguez*, 2014 WL 4094561, at *4 (W.D.N.Y. 2014) (Scott, M.J.) ("*Rodriguez I*"). The subsection's plain text "mandates the removal of any impediment to 'private consultations' [between attorney and client] that are qualitatively and quantitatively 'reasonable.'" *Id.;* cf. *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995) ("Section 3142(i)(3) is designed to protect a defendant's Sixth Amendment right to counsel, and if that right is being infringed, [the court] has the statutory authority to protect [defendant's] access to counsel.").

Here, it is even more important that Counsel have access to his client because of the proximity to the aforementioned trial date. How can counsel prepare for trial without access to

---

[3] Mr. Hudson has not been in favor of such a motion to date.

his client?

    This Court is fully aware of the bail considerations in this matter as the issue was extensively litigated at a previously held hearing where the Court reversed the Magistrate Court's ruling initially granting Mr. Hudson bail. However, the situation at the MCC arises to a change in circumstances that, most respectfully, requires this Court to reconsider Mr. Hudson's application for bail. Nothing alleged in the Superseding Indictment makes the Government's position with respect to bail more compelling that it previously was, and – as evidenced by Magistrate Judge Pitman's initial decision – the question of whether or not to grant bail was a close one. Moreover, Your Honor noted that part of the reason that bail was denied was that this was a case where bail should presumptively be denied, *i.e.* based on the offenses charged, and not necessarily on the specific facts of the case. The changed circumstances since that point – that is, the conditions at the MCC and the quickly approaching start of trial and deadlines for motion practice – mean that a reconsideration of whether that presumption should continue to carry the day is needed. Mr. Hudson is willing to abide by any conditions the Court sets including home detention.

    Thank you very much for your consideration of this urgent matter.

Most Respectfully,

David Touger, Esq.

cc: All Government Counsel