UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

UNITED STATES OF AMERICA,

        against-

CALVIN HUDSON,

        Defendant.

———————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/21/23

19 CR 496-01 (CM)

## DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

Calvin Hudson pleaded guilty to distributing and possessing with intent to distribute at least 28 grams of crack cocaine, in violation of 21 USC §§ 841(a)(1), (b)(1)(B), and was sentenced to 60 months in prison. Hudson is serving his sentence at Federal Correctional Institution Allenwood Low. He is scheduled to be released January 6, 2026.

Before the Court is Hudson's motion pursuant to 18 USC 3582 (c)(1)(A), asking the Court to release him from prison early based on his myriad medical conditions, the threat posed to his health from COVID-19, and his demonstrated rehabilitation. Def. Mot.at 2

The Government asks that the Court deny Hudson's motion arguing that he has not established extraordinary and compelling reasons justifying his early release and, in any event, the factors set forth in 18 U.S.C. § 3553(a) weigh against any such reduction. Govt. Mot. at 1.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of

1

imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] In the past, this Court—and many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)   Medical Condition of the Defendant—

    (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)  The defendant is—
        (I)    suffering from a serious physical or medical condition,
        (II)   suffering from a serious functional or cognitive impairment, or
        (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the

for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

<u>Hudson Exhausted his Administrative Remedies in the Bureau of Prisons</u>

In an email to R. Thompson (Warden of FCI Allenwood Low) dated December 4, 2022, Hudson asked that he be granted compassionate release stating: "Due to the Covid Pandemic being recently renewed by the Government, in addition to the most recent Covid outbreak at this

---

      environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

facility, I fear that my health is in jeopardy. I am a diabetic, and suffer from respiratory issues, in addition to heart problems. I was released from my pre-trial confinement from MCC due to these health concerns, so there exists a FBOP record of my issues." On December 12, 2022, the Warden denied the request.

Accordingly, Hudson has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

Hudson's Motion Before the District Court

Hudson asserts that his "pre-existing medical conditions" fit the definition of "extraordinary and compelling reasons." Def Mot. at 3. He alleges that he has experienced "an over-all decline in [his] health since surrendering" to FCI Allenwood in October 2022. Def. Mot. at 2. He asserts that he suffers from "long term symptoms" of COVID-19, as well as "poor eyesight, diabetes, severe length sensorimotor neuropathy, and narrowing of the proximal (*sic*) internal carotid artery in his heart." *Id*. He asserts that the facility does not "offer a diabetic menu for the diabetic prisoner population." *Id*. He further contends that the BOP has erred by not crediting time he spent on pretrial release against his sentence. *Id*. at 3-4. Hudson also includes several letters of support from family, friends, and community members. *Id*. at 4, 28-44.

*Hudson's Medical Condition*

Hudson does indeed suffer from a range of medical conditions, several of which appear linked to his Type 2 diabetes, including kidney disease and retinopathy. His medical records reflect, however, that these conditions are monitored, and he has received appropriate treatment for them. Furthermore, to the extent his health has worsened in custody, he has not shown that this is because of any inadequacy of the care he has received or that he would fare any better if not incarcerated. The Government, citing defendant's medical records, suggests that Hudson has

4

himself contributed to his circumstances by resisting or failing to follow the guidance of medical professionals. *See e.g.*, Ex. E at 3, 105 (records of May 2, 2023 encounter, reflecting Hudson's refusal to discuss his diabetes, and his refusal of medication adjustments or insulin therapy); 7 (record of March 13, 2023 encounter, reflecting Hudson was advised of "the need to be compliant with his current meds," and Hudson's refusal of any adjustment in his medications); 9 (record of March 10, 2023 encounter, reflecting Hudson was advised of "the need to make lifestyle modifications and adjusting his current medication dosages and possibly adding insulin," and Hudson's refusal of "any adjustment or addition to his current medication regimen").

Hudson in his reply papers says that his medical records were "falsified" or "misleading at best." He says that he was not refusing treatment but simply expressing his desire to consult with outside physician before agreeing to any recommendations to change his course of treatment. He says that after further consultation he agreed to the changes suggested by the BOP medical staff.

The Court need not decide whether Hudson has been a good patient while incarcerated. The relevant takeaway from Hudson's medical records is that BOP medical staff at Allenwood Low has been proactively treating Hudson's diabetes and related illnesses.

As for Hudson's assertion that FCI Allenwood Low does not offer a diabetic menu; Allenwood does in fact offer diabetic appropriate menu items within its "Heart Healthy" meals, which include whole grains, fruits, and vegetables, and inmates are empowered to self-select items appropriate to their medical conditions. *See* Allenwood Prison Handbook, Govt Exhibit G at 21.

Regarding Hudson's COVID-19 risk: COVID-19 is far from the dreaded killer that arrived on our shores in 2020. On May 11, 2023, the Center for Disease Control declared the COVID-19 public health emergency ended. The CDC has now shifted from an emergency response posture "to incorporating COVID-19 activities into sustainable public health practice." End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html. The incidence of COVID-19 infections throughout the Bureau of Prisons has dropped significantly, and BOP is currently reporting zero cases at Allenwood Low FCI. BOP COVID-19 Statistics, https://www.bop.gov/ coronavirus/covid19_statistics.html.

Furthermore, Hudson received two doses of Pfizer's COVID-19 vaccine and one booster in 2021. *See* Exhibit E at 37-38. In keeping with the BOP's robust vaccination program, Hudson will undoubtedly be offered the latest iteration of the vaccine, which the CDC says "more closely targets the XBB lineage of the Omicron variant and could restore protection against severe COVID-19 that may have decreased over time." CDC COVID-19 Home Page, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html. "We (the CDC) anticipate the updated vaccines will be better at fighting currently circulating variants." *Id.* Mr. Hudson is an intelligent man who knows how to advocate for himself, whether in the community or behind prison walls— he will no doubt be first in line to get the updated shot. Accordingly, the risk of contracting COVID-19 does not presently constitute an extraordinary and compelling circumstance warranting early release.[3]

---

[3] The pandemic was extremely hard on prisoners. The necessary steps that the BOP had taken to stop the spread of the deadly virus—lockdowns, suspension of programs, and curtailed visitation—led to harsher than usual conditions of confinement— a factor the Court can and does consider in deciding whether extraordinary and compelling circumstances warrant granting a *pandemic-era prisoner's* compassionate release motion. By allowing Mr. Hudson to continue to be at large during the heart of the COVID-19 pandemic (at defendant's request, for the expressed

6

The bottom line is that Hudson has failed to demonstrate that his medical condition or the specter of his contracting COVID-19 in prison constitutes an extraordinary and compelling reason to grant his release.

*Conditions of Pretrial Release*

Hudson argues that a reduction in his sentence is warranted because the BOP failed to subtract the 31 months' that he served on pretrial-home confinement from the 60-months sentence that this Court imposed. This argument is a nonstarter. BOP has no authority to subtract the time Hudson spent on home confinement from Hudson's court-imposed (60 months') term of incarceration. *See United States v. Pjetri*, No. 08 Cr. 65 (CM), 2014 WL 6851280, at *1 (S.D.N.Y. Dec. 2, 2014) ("The time spent by defendant on home confinement with electronic monitoring as part of his bail conditions does not qualify as 'official detention,' and he is not entitled to credit toward his federal sentence for that time."); *Cordell v. Warden, Alderson Prison Camp*, No. 20 Cv. 00542, 2021 WL 10445207, at *3 (S.D.W. Va. Sept. 23, 2021), report and recommendation adopted, 2023 WL 2871655 (S.D.W. Va. Apr. 10, 2023) ("Cordell was given pretrial release, albeit subject to home incarceration and other restrictive conditions. Nonetheless, she was not detained by the Court, surrendered to the custody of the Attorney General, or exposed to BOP control. Accordingly, her time spent on pretrial release does not qualify for credit under 18 U.S.C. § 3585(b).").

The time Hudson spent on pretrial release does not provide a basis to reduce his sentence.

---

reason of avoiding the harsh conditions of confinement owing to the pandemic), Hudson was spared that hardship. Thus, Hudson cannot argue now that the Court should consider the COVID-19 era conditions of confinement in deciding whether extraordinary and compelling circumstances warrant granting his motion.

*Rehabilitation*

Hudson argues that he is a changed man and has been punished enough for his crimes. As proof of his rehabilitation he offers letters from family, friends, and community members— all attesting to his good character.

The Court accepts that, at 60 years of age, Hudson has finally had enough of living life as a criminal. But that alone does not warrant his release. While rehabilitation can in some cases interact with other circumstances to create an extraordinary and compelling reason for a sentence reduction, this case is barren of other circumstances warranting release. As courts have found in other cases involving similar evidence, including this Court in its recent decision denying compassionate release to Hudson's co-defendant Jabron Green, the defendant's evidence of rehabilitation is not extraordinary and compelling. *See United States v. Green*, 19 Cr. 496 (CM) (Dkt. 168) (S.D.N.Y. May 25, 2023). Simply put, the evidence of rehabilitation offered by Hudson does not, alone or in combination with all other relevant considerations, establish extraordinary and compelling reasons for a reduction in his sentence.

*18 U.S.C. § 3553(a) Factors*

Even assuming Hudson satisfied his burden to establish extraordinary and compelling reasons that might support a sentence reduction, similar to co-defendant Green, the § 3553(a) factors weigh against Hudson's request that he be released after serving about nine months (less than 20 percent of his sentence and well below the bottom of the applicable Guidelines range even if that range was calculated by treating cocaine base the same as powder cocaine). Hudson's offense was serious and merits punishment—he personally sold a significant quantity of extremely dangerous narcotics for his own financial gain. Furthermore, he engaged in his criminal conduct following serious prior felony convictions (including criminal possession of a

8

controlled substance in the first degree, attempted robbery, burglary, and conspiracy) and after serving a lengthy prison sentence (approximately 15 years). In sum, Hudson's release after less than a year in custody would be insufficient to promote respect for the law, and to deter others from engaging in similarly destructive and dangerous crimes.

This constitutes the decision and order of the Court

Dated: September 21, 2023

_____
Colleen McMahon
United States District Court Judge